# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

*Plaintiff,*

vs.

Case No. 16-10009-EFM

DAEDERICK LACY,

*Defendant.*

## MEMORANDUM AND ORDER

On February 23, 2017, a jury convicted Defendant Daederick Lacy of one count of sex trafficking of a child, one count of sex trafficking accomplished by force, fraud, or coercion, and one count of transportation with intent to engage in criminal sexual activity. Lacy now moves this Court to enter a judgment of acquittal (Doc. 47). For the reasons stated below, the Court denies Lacy's motion.

## I.        Discussion

Under Fed. R. Crim. P. 29(c), a defendant may move the Court to set aside a jury verdict and enter an acquittal. Lacy argues that he is entitled to a judgment of acquittal because there was insufficient evidence presented for each of the three counts to sustain a conviction. In considering a challenge to the sufficiency of the evidence, the Court must determine whether "viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact

could have found the essential elements of the crime beyond a reasonable doubt."[1]  The jury may base its verdict on both direct and circumstantial evidence, together with all reasonable inferences that could be drawn therefrom.[2]

The Court may not "weigh conflicting evidence or consider witness credibility, as that duty is delegated exclusively to the jury."[3]  Instead, the proper inquiry is for the Court to "simply determine whether the evidence, if believed, would establish each element of the crime."[4]  Thus, the Court may only enter a judgment of acquittal if "no rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[5]

## A.    Sex Trafficking of a Child

To support a conviction for sex trafficking of a child, the Government must prove:

(1) That the defendant knowingly recruited, enticed, transported, provided, or maintained a minor, whom the defendant knew would be caused to engage in a commercial sex act;

(2) That the defendant:
   a.  Knew that the minor had not yet attained the age of 18 years; or
   b.  Recklessly disregarded the fact that the minor had not attained the age of 18 years; or
   c.  Had reasonable opportunity to observe the child; and

(3) That the offense was in or affecting interstate commerce.[6]

---

[1] *United States v. McPhilomy*, 270 F.3d 1302, 1307 (10th Cir. 2001) (emphasis in original) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[2] *United States v. Jones*, 768 F.3d 1096, 1101 (10th Cir. 2014).

[3] *Id.* (quoting *United States v. King*, 632 F.3d 646, 650 (10th Cir. 2011)).

[4] *Id.* (quoting *United States v. Delgado-Uribe*, 363 F.3d 1077, 1081 (10th Cir. 2004)).

[5] *Id.* (citing *King*, 632 F.3d at 650).

[6] *See* 18 U.S.C. § 1591(a)(1).

Here, the Government offered sufficient evidence pertaining to each element to support Lacy's conviction for sex trafficking of a child. Direct evidence was provided through testimony of B.J., the minor victim, and through Government's Exhibit 7—the Facebook conversation between B.J. and Lacy.

Regarding the first element, B.J. testified that her first communications with Lacy occurred around November 5th, 2015 after Lacy "in-boxed me on Facebook." Lacy messaged B.J.: "What's good. You trying to make some [money]?" After they established a relationship, B.J. testified that Lacy began posting advertisements for B.J. on Backpage.com, suggesting that B.J. would perform "sex acts for money." According to B.J., clients would contact Lacy about the ads, after which Lacy would drive B.J. to the "call." B.J. testified that she would then perform sex acts in exchange for money, and B.J. would then return to Lacy and give him the money she had received. This evidence is sufficient to establish the first element of the crime.

Regarding the second element, sufficient evidence was introduced for the jury to find that Lacy knew B.J. had not yet attained the age of 18, and that Lacy had reasonable opportunity to observe B.J. First, B.J. testified that she was 16 at the time she was performing "calls" for Lacy. B.J. testified that while she was doing these "calls" for Lacy, "[a]t first he thought I was 17, and then he found out my real age." This was reflected in the Facebook messages sent between B.J. and Lacy. She then testified that at one point during their relationship, she logged into Facebook on Lacy's phone, and he read through the messages on her account. While reading through a message chain between B.J. and her sister, Lacy discovered that B.J. was 16. B.J. testified that she and Lacy then had a conversation about her only being 16. The Government then asked: "After he finds out you're 16, are there still dates that occur—or calls that come in that you go and perform sex acts and receive money for?" B.J. answered: "Yes." Sufficient evidence was

therefore presented to establish that Lacy knew B.J. had not yet turned 18. Furthermore, B.J. testified that she had a relationship with Lacy between November 5th, 2015, and December 6th, 2015. This evidence is sufficient for a jury to find that Lacy had reasonable opportunity to observe B.J. Therefore, this evidence is sufficient to establish the second element of the crime.

Finally, the Government presented sufficient evidence to establish that the offense was in or affecting interstate commerce. The majority of Lacy's communications with B.J. were done through text messages and Facebook.com. And Lacy arranged for B.J. to perform sex acts for money by posting advertisements to Backpage.com. This evidence indicated that Lacy "had utilized facilities of interstate commerce, such as the internet and cellular phones, to engage in sex trafficking."[7]

Accordingly, a rational trier of fact could have found the essential elements of the crime of sex trafficking of a child beyond a reasonable doubt.

## B. Sex Trafficking Accomplished by Force, Fraud, or Coercion

To support a conviction for sex trafficking accomplished by force, fraud, or coercion, the Government must prove the following elements:

(1) That the defendant knowingly recruited, enticed, harbored, transported, provided, obtained or maintained a person whom the defendant knew would be caused to engage in a commercial sex act;

(2) That the defendant knew that force, threats of force, fraud, or coercion, or any combination of such means, would be used to cause such person to engage in a commercial sex act; and

---

[7] *United States v. Brinson*, 772 F.3d 1314, 1325–26 (10th Cir. 2014) (concluding that the evidence presented at trial, which included the defendant's use of Backpage.com to post escort advertisements, use of cellphones to direct the victim's prostitution, and the use of text messages to warn the victim about the presence of police, was sufficient for a jury to reasonably conclude that the defendant used interstate commerce to engage in sex trafficking).

(3) That the offense was in or affecting interstate commerce.[8]

Here, the Government offered sufficient evidence pertaining to each element to support Lacy's conviction for sex trafficking accomplished by force, fraud, or coercion. Direct and circumstantial evidence was provided through testimony of S.G. (the victim), S.G.'s mother, Officer Crafton, Mathew Molino, and through Government's Exhibits 1, 2, and 17.

First, S.G. testified that Lacy contacted her through Facebook. Their Facebook conversation revealed that Lacy promised S.G. more than $500,000 in income if she would agree to work for him, possibly as a model. Lacy told S.G. that he had a flight attendant that worked for him, so S.G. could travel the world with him for free. When S.G. agreed to meet with Lacy, Lacy took her to a dorm room at Friends University. There, S.G. was introduced to B.J., and the two began "talking about other things, about sexual matters to other people." Lacy then took S.G.'s phone and car keys from her. Using pictures from S.G.'s phone, Lacy posted an advertisement of her on Backpage. Lacy then told S.G. that she had a client, and he drove her to a hotel to meet the client, at which point S.G. engaged in a sex act with the client in exchange for money, which she provided to Lacy after the encounter. This evidence is sufficient for a reasonable jury to conclude that Lacy recruited, enticed, transported, or maintained a person whom the defendant knew would be caused to engage in a commercial sex act.

Second, testimony from S.G., her mother, and Officer Crafton sufficiently established that Lacy used force, threats of force, fraud, or coercion to cause S.G. to engage in a commercial sex act. S.G. testified that Lacy was controlling of her. For example, she testified that Lacy tried to make her sell her car even though she did not want to. She "felt like [she] was forced," and

---

[8] *See* 18 U.S.C. § 1591(a)(1).

not "in control." Mathew Molina's testimony corroborated this. And as mentioned above, Lacy took her car keys and her phone from her before he drove her to the hotel for the "call." On cross-examination, S.G. testified that she engaged in the sex act for money because "I felt like I had lost my control, like, as in I wasn't able to do anything under my control." She then testified that when she got her car keys back, she drove off, but Lacy chased after her and tried to drive her off the road. S.G.'s mother testified that she received a phone call from S.G., in which S.G. told her that "[h]e's gonna kill me." At that point, S.G.'s mother testified that she called 911.

The responding officer—Officer Crafton—testified that he received a report about a woman who was really worried "because this guy has threatened to kill her . . . and also making her have sex and also making her become a prostitute and threatening her life." When Officer Crafton was able to locate S.G., he testified that "she seemed very distressed," and "visibly upset." He testified: "She explained that she met a Daederick Lacy and . . . communicated with him on Facebook . . . and at first she said this individual was wanting her to work in some kind of recruiting-type situation where she would recruit people for jobs, and that she would—and it sounded kind of glamorous . . . ." He further testified about what S.G. told him about her first "call." S.G. believed that "her job was to do massages on people . . . and they ended up getting this room at the Regency Inn, and . . . Daederick and her were sitting in her car . . . and that he wanted to have sex with her but she didn't want to . . . and that she said that Daederick told her, you know, you can't turn back now . . . and then oral sex came up and she agreed to do oral sex with him because she didn't really want to . . . but she felt threatened that she had to or she wasn't going to be able to get out of this situation alive." Together, this evidence sufficiently established that Lacy used force, threats of force, fraud, or coercion to cause S.G. to engage in a commercial sex act.

Regarding the third element, S.G. testified that Lacy would communicate with her through talking on the phone, texting on the phone, and using Facebook. As explained above, this evidence supports the conclusion that Lacy utilized facilities of interstate commerce in commission of the offense.[9]

Accordingly, a rational trier of fact could have found the essential elements of the crime of sex trafficking accomplished by force, fraud, or coercion beyond a reasonable doubt.

## C.     Transportation With Intent to Engage in Criminal Sexual Activity

To support a conviction for transportation with intent to engage in criminal sexual activity, the Government must prove the following elements:

(1) That the defendant knowingly transported a person from one state into another state;

(2) That the person was under the age of 18 at the time;

(3) That the defendant did this with the intent that such person would engage in criminal sexual activity, that being prostitution.[10]

Here, the Government offered sufficient evidence pertaining to each element to support Lacy's conviction for transportation with intent to engage in criminal sexual activity.

First, the Government presented evidence to establish that S.B., another minor victim, was transported from Kansas to Texas. Although S.B. was not available to testify, B.J. testified that she knew S.B. during the month that she worked for Lacy. The Government introduced into evidence a picture of B.J. and S.B. together that was taken in November 2015 at the Friends University dorms in Wichita, Kansas. This evidence is sufficient to establish that S.B. was in Kansas in November 2015. The Government then provided evidence that Lacy transported S.B.

---

[9] *See Brinson*, 772 F.3d at 1325–26.

[10] *See* 18 U.S.C. § 2423(a).

to Texas. Dana Reed testified that Lacy borrowed Reed's car on December 6th, 2015. Lacy sent Reed a text message saying that he "need[ed] a week max to stack and lay low." During this conversation, Lacy often used the pronoun "we" while talking about his plans to "lay low," indicating that he was not traveling alone. On December 7th, Reed's car (which Lacy had borrowed) was located at a hotel in Mesquite, Texas. The police located S.B. at that same hotel. This evidence is sufficient to support the conclusion that Lacy transported S.B. from Kansas to Texas using Dana Reed's car.

Regarding the second element, S.B.'s mother testified that S.B. was only 17 years old during the period of time she had a relationship with Lacy (November and December of 2015). This testimony is sufficient for a jury to conclude that S.B. was a minor at the time she was transported from Kansas to Texas.

Third, the Government presented sufficient evidence to support the conclusion that Lacy transported S.B. from Kansas to Texas with the intent that S.B. engage in prostitution. B.J. testified that both she and S.B. performed sex acts in exchange for money at Lacy's direction. B.J. also testified that S.B. and Lacy had "[p]retty much the same relationship" as B.J. had with Lacy—indicating that S.B. also engaged in prostitution for Lacy. The Government introduced Facebook conversations in which B.J. and S.B. talked about "calls" and condoms. This evidence reasonably supports the conclusion that S.B. engaged in prostitution for Lacy in Kansas.

Then, the Government introduced a receipt bearing Lacy's name. The receipt reflected that Lacy purchased Lifestyles condoms in Wichita, Kansas on December 3rd, 2015. This receipt was then found in the motel room with S.B. in Mesquite, Texas on December 8th when the police searched the room. In addition, Lacy also sent Reed a text message saying he needed "a week max to stack and lay low," which could reasonably be interpreted to conclude that Lacy

intended to "stack"—or make money—by having S.B. engage in sex acts for money there in Texas. Although this evidence is circumstantial, it does support the reasonable inference that Lacy transported S.B. from Kansas to Texas with the intent that S.B. engage in prostitution.

Accordingly, a rational trier of fact could have found the essential elements of the crime of transportation with intent to engage in criminal sexual activity beyond a reasonable doubt.

## II.      Conclusion

Lacy's convictions were supported by sufficient evidence. The Government provided sufficient evidence for all three elements of sex trafficking of a child; all three elements of sex trafficking accomplished by force, fraud, or coercion; and all three elements of transportation with intent to engage in criminal sexual activity. Thus, the Court denies Lacy's motion for judgment of acquittal on the three crimes.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Judgment of Acquittal— Rule 29 (Doc. 47) is hereby **DENIED.**

**IT IS SO ORDERED.**

Dated this 9th day of May, 2017.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE