IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

 *Plaintiff,*

vs.

DAEDERICK CADELL LACY,

 *Defendant.*

Case No. 16-CR-10009-EFM

**MEMORANDUM AND ORDER**

On February 23, 2017, a jury found Petitioner Daederick Cadell Lacy ("guilty on three separate counts. Petitioner brings a Motion to Vacate under 28 U.S.C. § 2255 (Doc. 95). In this motion, Petitioner contends that there were multiple errors during his case that require his conviction to be set aside. After an evidentiary hearing held in November 2022 and March 2023, and as will be explained below, the Court denies Petitioner's § 2255 motion.

**I. Factual and Procedural Background**

In January 2016, Petitioner was indicted on three counts: (1) sex trafficking of a child in violation of 18 U.S.C. § 1591(a)(1); (2) sex trafficking accomplished by force, fraud or coercion in violation of 18 U.S.C. § 1591(a)(1); and (3) transportation with intent to engage in criminal sexual activity in violation of 18 U.S.C. § 2423(a).

After a two-day jury trial in February 2017, the jury convicted Petitioner on all three counts. Petitioner filed a Motion for Acquittal, which was denied. Petitioner also filed a Motion for Downward Departure prior to his sentencing. At sentencing, the Court found that although Petitioner's guideline range was correctly calculated at criminal history category III,[1] the Court would consider Petitioner a criminal history category II. Thus, Petitioner's guideline range was 235 to 293 months, and the Court sentenced Petitioner to 293 months.

Petitioner filed an appeal. He claimed that Count I should be reversed because there was insufficient evidence and the Court should have provided the jury with a technical definition for "sex act," that Count II should be reversed because the district court should not have allowed two law enforcement officers to testify, and that Count III should be reversed due to insufficient evidence. The Tenth Circuit Court of Appeals affirmed Petitioner's conviction and sentence.[2]

On October 2, 2020, Petitioner filed this Motion to Vacate under 28 U.S.C. § 2255. In this motion, Petitioner argues that his conviction should be set aside. Petitioner originally proceeded pro se and raised three broad issues: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) a violation of "Due Process."[3] After reviewing Petitioner's motion, the Court determined that an evidentiary hearing may be necessary and appointed counsel to assist Petitioner.

---

[1] Based on a total offense level of 37 and a criminal history category III, Petitioner's guideline range was 262 to 327 months.

[2] *United States v. Lacy*, 904 F.3d 889 (10th Cir. 2018).

[3] Petitioner included many sub-issues.

Petitioner's counsel then filed briefing related to Petitioner's § 2255 claims, and an evidentiary hearing was held in November 2022 and March 2023.[4]  During the evidentiary hearing, Petitioner affirmatively abandoned all the claims he asserted in his pro se brief.  Petitioner now relies solely on the ineffective assistance of trial counsel claim asserted by his § 2255 counsel in the evidentiary brief.[5]  Petitioner requests a reduction in his sentence, or alternatively, a new trial.  As discussed below, based on a review of the record, the Court finds Petitioner's claim fails.

## II.    Legal Standard

Under 28 U.S.C. § 2255(a),

> a prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

According to Rule 4(b) of the Rules Governing Section 2255 Proceedings for the United States District Courts,

> the judge who receives the motion must properly examine it.  If it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . . If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order.

---

[4] COVID-19 delayed the evidentiary hearing substantially because Petitioner was unable to be transferred to a closer prison.  In addition, during the November 2022 hearing, an issue came up that required additional investigation, a hearing, and briefing.

[5] This claim also has sub-issues that will be discussed below.

The court must hold an evidentiary hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."[6] The petitioner must allege facts that, if proven, would warrant relief from his conviction or sentence.[7] An evidentiary hearing is not necessary where a § 2255 motion contains factual allegations that are contradicted by the record, inherently incredible, or when they are conclusions rather than statements of fact.[8]

### III.     Analysis

Petitioner contends that his trial counsel was ineffective. In general, to succeed on a claim of ineffective assistance of counsel, a petitioner must meet the two-prong test set forth in *Strickland v. Washington*.[9] Under *Strickland*, a petitioner must prove that: (1) his counsel's representation was constitutionally deficient because it fell below an objective standard of reasonableness, and (2) the deficiency prejudiced the petitioner because it deprived him of the right to a fair trial.[10] To prevail on the first prong, a petitioner must demonstrate that the omissions of his counsel fell "outside the wide range of professionally competent assistance."[11] This standard is "highly demanding."[12] Strategic or tactical decisions on the part of counsel are presumed correct, unless

---

[6] 28 U.S.C. § 2255(b).

[7] *See Hatch v. Oklahoma*, 58 F.3d 1447, 1471 (10th Cir. 1995), *overruled in part on other grounds by Daniels v. United States*, 254 F.3d 1180, 1188 n.1 (10th Cir. 2001).

[8] *See id.* (stating that "the allegations must be specific and particularized, not general or conclusory"); *see also United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994) (rejecting ineffective assistance of counsel claims that were merely conclusory in nature and without supporting factual averments).

[9] 466 U.S. 668 (1984).

[10] *Id.* at 687-88.

[11] *Id.* at 690.

[12] *Kimmelman v. Morrison*, 477 U.S. 365, 382 (1986).

they were " 'completely unreasonable, not merely wrong, so that [they] bear no relationship to a possible defense strategy.' "[13]  The reasonableness of the challenged conduct must be evaluated from counsel's perspective at the time of the alleged error.[14]  "[E]very effort should be made to 'eliminate the distorting effects of hindsight.' "[15]

As to the second prong, a petitioner "must show prejudice, meaning 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' "[16]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."[17]  This requires the court to focus on "whether counsel's deficient performance render[ed] the result of the trial unreliable or the proceeding fundamentally unfair."[18] Courts reviewing an attorney's performance must exercise deference, as "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."[19] A failure to prove one of the *Strickland* prongs is dispositive to a petitioner's claim, and a court may dispose of either the first or second prong, whichever is easier to resolve.[20]

---

[13] *Fox v. Ward*, 200 F.3d 1286, 1296 (10th Cir. 2000) (quoting *Hatch*, 58 F.3d at 1459).

[14] *See Edens v. Hannigan*, 87 F.3d 1109, 1114 (10th Cir. 1996).

[15] *Id*. at 1114 (quoting *Strickland*, 466 U.S. at 689).

[16] *United States v. Barrett*, 797 F.3d 1207, 1214 (10th Cir. 2015) (quoting *United States v. Rushin*, 642 F. 3d 1299, 1302 (10th Cir. 2011)).

[17] *Strickland*, 466 U.S. at 694.

[18] *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993) (citing *Strickland*, 466 U.S. at 687).

[19] *Strickland*, 466 U.S. at 690.

[20] *United States v. Orange*, 447 F.3d 792, 796-97 (10th Cir. 2006) (citations omitted).

Petitioner asserts that his trial counsel was ineffective for numerous reasons, including: (1) failure to adequately communicate with him prior to trial; (2) failure to file a motion in limine to (a) exclude evidence of Petitioner's prior arrests and convictions and (b) to prohibit the use of the word "victim" during trial; (3) failure to conduct a reasonable investigation; (4) failure to submit a trial brief; (5) failure to deliver a meaningful opening statement; (6) failure to object to the government's evidence; and (7) failure to effectively cross-examine the government's witnesses. Petitioner contends that, in the aggregate, these failures were objectively unreasonable and denied him a fair trial.

*1. Failure to Communicate with Petitioner Prior to Trial*

Petitioner contends that his trial counsel, Mr. Mank, failed to adequately communicate with him prior to trial. A brief background regarding Petitioner's history with counsel is necessary. Petitioner was first appointed counsel in April 2016. In May, Petitioner requested that his counsel be removed due to a breakdown in communication. In July 2016, the Court appointed Petitioner new counsel. In September, Petitioner requested that his second counsel be removed due to a breakdown in communication. On October 19, 2016, the Court appointed Mr. Mank as Petitioner's third attorney.

Mr. Mank met with Petitioner for the first time on October 26, 2016. Over the next several months, Mr. Mank met with Petitioner a few times. Petitioner contends that the few times Mr. Mank met with him was insufficient and negatively affected him because they could not discuss trial strategy and he could not participate in his own defense.

Trial counsel is presumed to be effective. "[W]e give considerable deference to an attorney's strategic decisions and 'recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional

judgment.' "[21]  Here, the evidence shows that although Petitioner may not have received as much communication as he would have liked, his counsel communicated with him.  Petitioner does not identify how his counsel's communication fell below an objective standard of reasonableness.

Furthermore, the evidence demonstrates that Petitioner was able to communicate with his counsel and participate in his defense.  Mr. Mank's file included an extensive list of questions prepared by Petitioner that Petitioner wanted Mr. Mank to ask multiple witnesses.  Mr. Mank testified that he reviewed these questions but made the determination himself as to the appropriateness of the question.  To the extent that Petitioner argues that his counsel did not employ Petitioner's suggested trial strategy, disagreement over strategic decisions does not constitute ineffective assistance of counsel.  In sum, Petitioner fails to demonstrate that his trial counsel's failure to communicate with him as much as he would have preferred prior to trial was objectively unreasonable or prejudicial.

  2. *Failure to File a Motion in Limine*

Petitioner claims that his counsel should have filed two motions in limine.  The Court will address both contentions.

  a.  *Prior Arrests and Convictions*

He first contends that a motion in limine should have been filed to exclude evidence of Petitioner's prior arrests and convictions.  Petitioner asserts that if a motion in limine was filed, and granted, to exclude evidence of his 2014 and 2015 arrests for human trafficking charges, he would have testified at trial.  Furthermore, he states that had he testified, there is a reasonable probability that the trial result would have been different.

---

[21] *Bullock v. Carver*, 297 F.3d 1036, 1044 (10th Cir. 2002) (quoting *Strickland*, 466 U.S. at 690).

At the evidentiary hearing, Mr. Mank testified that he decided to not file a motion in limine because the government had not filed a Rule 404(b) notice.[22] He also testified that he did not file a motion because he thought it was unnecessary and strategically disadvantageous because it would inform the Court about Petitioner's background. Again, with ineffective assistance of counsel claims, trial counsel is presumed to be effective, and the Court gives considerable deference to strategic decisions.[23] Here, the evidence shows that Petitioner's counsel made the strategic decision on whether to file a motion in limine regarding Petitioner's prior arrests and convictions. Disagreement over strategic decisions does not constitute ineffective assistance of counsel, and Petitioner cannot demonstrate that his counsel's conduct fell below an objective standard of reasonableness.

Furthermore, Petitioner cannot demonstrate prejudice because Petitioner's contentions are entirely speculative.[24] Even if Petitioner's counsel was successful with a motion in limine in excluding evidence of Petitioner's prior offenses, it is unclear as to how Petitioner would testify. Depending on Petitioner's testimony, the limine ruling could be revisited and overturned. Petitioner's testimony, and the government's cross-examination, could have been more harmful than helpful. In short, it is speculative as to whether Petitioner's testimony would have changed the result of trial. Thus, the alleged failure to file a motion in limine to exclude Petitioner's prior arrests was not deficient nor prejudicial to Petitioner.

---

[22] The Court notes that the government did not introduce evidence regarding Petitioner's prior criminal activity.

[23] *Id*.

[24] *See Hooks v. Workman*, 689 F.3d 1148, 1187 (10th Cir. 2012) (noting that the prejudice prong of *Strickland* cannot be based on speculation but instead requires a reasonable probability that the outcome would have been different).

     *b.*  *Use of the Word "Victim"*

  Petitioner next contends that his counsel should have filed a motion to prohibit the use of the word "victim" during trial. He contends that the use of the term improperly influenced the jury because the jury was to decide whether there was a victim in the case.

  Several courts have granted limine motions prohibiting the use of the word "victim" during trial.[25] These courts, however, have also noted that there is little case law or authority specifically prohibiting the use of the word.[26] It appears that the request to prohibit the use of the word "victim" during trial is a recent development as the federal case law is primarily from 2021 through the present. Petitioner's trial occurred in 2017. The Court cannot find that Petitioner's counsel's failure to file a limine motion in 2017 requesting the prohibition of the term "victim" fell below an objective standard of reasonableness.

  Furthermore, the term was used so infrequently—approximately four times throughout the entire trial—that Petitioner cannot show that it made the trial fundamentally unfair.[27] In addition, as the government notes, Petitioner's attorney used the term "alleged victims" during voir dire, and the Court instructed the jury that statements by the attorneys were not evidence. Accordingly, Petitioner also cannot demonstrate prejudice.

---

[25] *See United States v. Sena*, 2021 WL 4129247, at *1-2 (D.N.M. 2021) (finding that the repeated use of the term "victim" at trial would outweigh the probative value of the term); *United States v. Barela*, 2021 WL 5177739, at *1-2 (D.N.M. 2021) (finding that frequent or pervasive use of the term may be prejudicial and prohibiting the use of the word "victim" throughout trial but allowing it during closing arguments).

[26] *Sena*, 2021 WL 4129247, at *1 (finding no authority that explicitly prohibits the use of the term "victim" at trial); *Barela*, 2021 WL 5177739, at *1 (finding little federal authority on the prejudicial versus probative value of using the term "victim" during trial).

[27] The term was used once during opening, once during the presentation of evidence, and twice during closing argument. At least one of the cases prohibiting the use of the term "victim" only prohibited it during the presentation of evidence and allowed it during closing argument finding that it was not prejudicial at that time. *Barela*, 2021 WL 5177739, at *2.

### 3. *Failure to Conduct a Reasonable Investigation*

Petitioner asserts that his counsel failed to perform a reasonable investigation. He contends that his counsel should have, at the least, interviewed the three alleged victims. Had counsel performed an investigation, he asserts that the trial's result would be different.

"[C]ounsel has a duty to make reasonable investigations" and a "decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."[28] "[S]trategic choices made after a thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[29] "But strategic decisions made after less than a complete investigation are reasonable only 'to the extent that reasonable professional judgments support the limitations on investigation.' "[30] When considering the reasonableness of counsel's actions, they "may be determined or substantially influenced by the defendant's own statements or actions."[31]

In this case, Mr. Mank testified that Petitioner told him that the three victims would not appear in court and that he did not have to worry about them testifying against Petitioner. Thus, the reasonableness of Mr. Mank's decision to not interview the three victims is premised on Petitioner's statement that the victims would not even be present to testify. And while Mr Mank's counsel also testified that he believed the victims would show up, he stated that he tried to find one and could not. Counsel also had the victim's phone records, statements, and interviews to

---

[28] *Strickland*, 466 U.S. at 691.

[29] *Id.* at 690.

[30] *Newmiller v. Raemisch*, 877 F.3d 1178, 1198 (10th Cir. 2017) (quoting *Strickland*, 466 U.S. at 691)).

[31] *Strickland*, 466 U.S. at 691.

review and from which to prepare for trial. In short, in considering all the circumstances, and applying deference to counsel's judgment, the Court cannot find that Petitioner's counsel's performance fell below an objective standard of reasonableness in investigating. Accordingly, Petitioner's contention is without merit.

   4. *Failure to Submit a Trial Brief*

Petitioner's next contention is that his trial counsel was ineffective because he failed to submit a trial brief. He asserts that he could have demonstrated to the Court that there was little evidence as to Counts 2 and 3. Petitioner's counsel testified that he thought that the trial issues were straight-forward and there was no need for a trial brief. In jury trials, the Court permits, but does not require, trial briefs. The failure to file a trial brief would have no impact on the jury as it would only be beneficial for the Court, and the Court was in the position to view the evidence. Here, Mr. Mank's performance was well within the bounds of reasonable behavior. In addition, Petitioner cannot demonstrate that he was prejudiced by the lack of a trial brief to the Court.

   5. *Failure to Deliver a Meaningful Opening Statement*

Petitioner asserts that his counsel failed to deliver a meaningful opening statement because he should have outlined the insufficiency of the evidence. Again, Petitioner's counsel testified during the evidentiary hearing that his opening statement was brief because he did not want to tell the jury something that he could not deliver. He informed the jury that the government would not be able to prove its case. Although the Court agrees that counsel's opening statement was brief, it cannot say that it was objectively unreasonable under the circumstances.[32] Counsel testified that

---

[32] *See Jackson v. Houk*, 687 F.3d 723, 741 (6th Cir. 2012) (noting that "the decision to forgo an opening statement entirely 'is ordinarily a mere matter of trial tactics and . . . will not constitute . . . a claim of ineffective assistance of counsel.'") (quoting *Millender v. Adams*, 376 F.3d 520, 525 (6th Cir. 2004)).

he had a strategy, and as noted by the Court to the jury, opening statements by the attorneys are not evidence. Furthermore, Petitioner cannot identify how he was prejudiced by the short opening statement. Accordingly, Petitioner's contention is meritless.

    *6. Failure to Object to the Government's Evidence*

Petitioner next contends that his counsel failed to appropriately object to several of the government's witnesses and some of the government's evidence. Petitioner asserts that there were numerous times in which Petitioner's counsel could have objected to testimony on hearsay grounds or could have objected to exhibits based on a lack of foundation. He argues that the inclusion of hearsay testimony was prejudicial.

Petitioner identifies several instances of hearsay from multiple witnesses. He first contends that part of S.G.'s testimony (the victim of Count 2) in which she discusses a conversation she had with Petitioner and another victim about making money and sexual matters was hearsay. In addition, Petitioner asserts that Satterfield's testimony that her daughter, S.G., told her that she had to do sex acts was hearsay. The government contends that S.G.'s testimony was not hearsay because she was testifying about something she herself said previously and that Satterfield's testimony would fall under an excited utterance hearsay exception.

Petitioner, however, does not specifically identify the prejudice from these statements. And to succeed on an ineffective assistance claim, there must be a reasonable probability that the result of the trial would be different.[33] Because Petitioner does not specifically identify how the result would be different, his claim with regard to these statements fails. To the extent that Petitioner believes this testimony impacted the jury's decision as to Count 2, the Court finds that

---

[33] *Barrett*, 797 at 1214.

there is not a reasonable probability that the result of the trial would have been different had these statements been excluded as hearsay because there was sufficient other evidence by S.G., S.G.'s mother, and other witnesses to support a conviction on Count 2.

As to Officers Crafton and Nagy's hearsay testimony, Petitioner also cannot demonstrate that it was prejudicial. Petitioner brought this issue up on direct appeal, and the Tenth Circuit reviewed it, albeit under the plain error standard because a hearsay objection was not raised during trial.[34] In the Tenth Circuit's decision, it determined that the testimony was not prejudicial and that there was not a reasonable probability that the jury would not have convicted Petitioner were it not for these officers' hearsay testimony. The Tenth Circuit's analysis is controlling, and the Court will not set forth the entirety of the Tenth Circuit's extensive reasoning as to the sufficiency of the evidence as to Count 2.[35] Instead, the Court simply notes that the Court agrees with it. Thus, the Court finds that Petitioner's counsel's failure to object to these officers' hearsay testimony did not prejudice Petitioner.

Petitioner also states that his counsel should have objected to Detective Huhman's testimony when he stated that B.J. identified S.B. Furthermore, Petitioner asserts that counsel should have objected to Detective Klumpp's testimony regarding Petitioner's and S.B.'s travel to Texas based on a lack of foundation. Petitioner contends that this testimony is prejudicial because there was a lack of evidence as to Count 3 (S.B. is the subject of that count). Even assuming counsel's performance was objectively unreasonable with regard to these instances, the Court

---

[34] *See United States v. Hinson*, 475 F. App'x 298, 304 (10th Cir. 2012) (noting that the "substantial-rights prong of plain-error review is identical in form and substance to the prejudice prong of *Strickland*, which requires a defendant to show 'a reasonable probability that, but for counsel's error, the result of the proceeding would have been different.' ") (quoting *Byrd v. Workman*, 645 F.3d 1159, 1168 (10th Cir. 2011)).

[35] *Lacy*, 904 F.3d at 895-96.

cannot find prejudice.  The Court again looks to the Tenth Circuit's opinion for guidance. Although the Tenth Circuit did not address whether Detective Huhman's testimony was hearsay or whether Detective Klumpp's testimony lacked foundation or personal knowledge, the Tenth Circuit did provide an in-depth review of the sufficiency of the evidence as to Count 3.[36]  The circuit found that: (1) Petitioner's roommate's testimony; (2) another victim's testimony; (3) Petitioner's own texts (specifically to his roommate because he borrowed his roommate's vehicle); (4) Petitioner's cell phone geolocation at a hotel in Mesquite Texas; (5) the 17-year old victim and Petitioner's roommate's vehicle found at the Texas hotel; (6) an unsuccessful chase with an unidentified individual at the hotel when police arrived; and (7) clothes and documents associated with Petitioner in the Texas hotel room, including a receipt for condoms purchased in Kansas, were more than sufficient evidence from which a jury to convict Petitioner on Count 3.  None of this evidence relates to Detective Huhman's or Detective Klumpp's testimony.  Thus, regardless of whether Mr. Mank should have objected to their testimony and had it excluded, Petitioner cannot demonstrate prejudice because there was more than enough other evidence to convict Petitioner on Count 3.

Finally, Petitioner asserts that an exhibit, a Backpage ad in which there was multiple pictures of women, including S.G., was not properly authenticated.  S.G. identified herself in the picture but also stated that she did not know what was posted online.  "Trial counsel's decision to object to evidence is generally within the realm of trial strategy."[37]  Here, as the government points out, Petitioner's counsel testified during the evidentiary hearing that he does not always object

---

[36] *Id.* at 898-99.

[37] *United States v. Rios-Morales*, 2020 WL 6798825, at *9 (D. Kan. 2020) (citing *Yarrington v. Davies*, 992 F.2d 1077, 1080 (10th Cir. 1993)).

because it draws attention to it. Petitioner's counsel may not have objected on the basis that he did not want to draw more attention to it, and in any event, the Backpage ad likely would have been admitted later through different witnesses who obtained it. Thus, Petitioner cannot identify prejudice.

In sum, Petitioner's contention that his trial counsel was ineffective for failing to object to witness testimony and evidence is without merit because he cannot show that trial counsel's conduct fell below an objective standard of reasonableness or cannot demonstrate prejudice.

*7. Failure to Effectively Cross-Examine the Government's Witnesses*

Petitioner's last ineffective assistance of counsel argument relates to his counsel's alleged failure to effectively cross-examine the government's witnesses. He identifies four witnesses that his counsel failed to adequately cross-examine. Generally, "[c]ounsel's selection of questions is a matter of 'strategic choice,' as to which he has broad latitude."[38]

During the evidentiary hearing, Petitioner's counsel was asked about his cross-examination of witnesses. He set forth his trial strategy as to questioning of the government's witnesses, and his strategic choices were not objectively unreasonable. In addition, Mr. Mank testified that he usually checked with Petitioner to determine if there was any issue that Petitioner believed he missed before concluding his cross-examination. Thus, Petitioner cannot demonstrate that his counsel's performance was unreasonable or prejudicial.

The Court, however, will briefly address Petitioner's contention that his counsel failed to effectively cross-examine S.G. He contends that his counsel should have questioned her credibility

---

[38] *United States v. Snyder*, 787 F.2d 1429, 1432 (10th Cir. 1986) (quoting *United States v. Glick*, 710 F.2d 639, 644 (10th Cir. 1983)).

regarding her knowledge of the sex industry and her willingness to engage in sex acts for money. And he asserts that her prior contacts with men were highly relevant and probative to show that she was not forced by Petitioner to engage in sexual acts.

This evidence or line of questioning, however, would likely not be admissible or allowed. In *United States v. Palms*, the Tenth Circuit noted that "[e]vidence that a sex trafficking victim previously engaged in prostitution is irrelevant to whether that victim was forced or coerced into working as a prostitute at a later date."[39] The Court notes that the Tenth Circuit's *Palms* opinion was not issued at the time of Petitioner's trial. In 2017, however, multiple other circuits had concluded that evidence regarding a victim's prior commercial sex acts were irrelevant to whether the victims were coerced into working as a prostitute.[40] And as noted during the evidentiary hearing, it is highly unlikely that the Court would have allowed questioning or evidence regarding S.G.'s prior sexual acts. Thus, Petitioner's contentions are speculative, and Petitioner cannot demonstrate prejudice. In sum, Petitioner cannot demonstrate ineffective assistance of counsel as to his counsel's alleged failure to effectively cross-examine witnesses.

    8.    *Cumulative Error*

Petitioner does not specifically discuss cumulative error, but he does assert in his conclusion that the numerous deficiencies, in the aggregate, compromised the integrity of his convictions and deprived him of a fair trial. "Cumulative-error analysis applies only where the record reveals two or more actual errors, and a petitioner is entitled to relief only if the entire

---

[39] 21 F.4th 689, 703 (10th Cir. 2021) (citations omitted).

[40] *Id.* (collecting cases from the Second, Eighth, Seventh, and Ninth Circuit Courts of Appeal).

proceeding was so fundamentally unfair as to constitute a violation of his due process rights."[41]  In this case, the Court did not find any errors such that cumulative-error analysis would be applicable.

In sum, Petitioner's § 2255 motion is without merit.[42]

### IV. Certificate of Appealability

Rule 11 of the Rules Governing Section 2255 Proceedings requires the Court to grant or deny a certificate of appealability ("COA") when making a ruling adverse to the petitioner.  A court may only grant a COA "if the applicant has made a substantial showing of the denial of a constitutional right."[43]  A petitioner satisfies this burden if " 'reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.' "[44]  For the reasons explained above, Petitioner has not made a substantial showing of the denial of a constitutional right.  Therefore, the Court denies a COA.

---

[41] *United States v. Verdin-Garcia*, 2010 WL 1643737, at *12 (D. Kan. 2010) (citing *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir. 1997)).

[42] Because Petitioner's motion is without merit, it is unnecessary for the Court to discuss Petitioner's request for a reduced sentence as he only makes this request should the Court find ineffective assistance of counsel.

[43] 28 U.S.C. § 2253(c)(2).  The denial of a § 2255 motion is not appealable unless a circuit justice or a circuit or district judge issue a COA.  *See* 28 U.S.C. § 2253(c)(1).

[44] *Saiz v Ortiz*, 392 F.3d 1166, 1171 n.3 (10th Cir. 2004) (quoting *Tennard v Dretke*, 524 U.S. 274, 282 (2004)).

**IT IS THEREFORE ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255 (Doc. 95) is hereby **DENIED**.

**IT IS SO ORDERED**.

Dated this 28th day of June, 2023.

ERIC F. MELGREN
CHIEF UNITED STATES DISTRICT JUDGE